(No. 5095. Decided December 22, 1904.)

PATRICK LYNCH, *Appellant,* v. A. R. KINETH *et al.,*
*Respondents.*[1]

ANIMALS—VICIOUS HORSES—INJURY INFLICTED BY RUNAWAY
TEAM. The owners of a team of vicious horses of known pro-
pensity to run away are liable for all injury inflicted thereby,
without proof of negligence or fault in endeavors to prevent
the doing of the mischief.

SAME—NOTICE. Knowledge of the defendants' drivers of the
vicious character of a runaway team is imputed to the owner.

ANIMALS—VICIOUS HORSES—NEGLIGENCE—INJURY INFLICTED BY
RUNAWAY TEAM — CONTRIBUTORY NEGLIGENCE — EVIDENCE—SUFFI-
CIENCY—NONSUIT—QUESTION FOR JURY. In an action for personal
injuries sustained by one who, while driving on the public high-
way, was run into by defendants' runaway team, alleged to
be vicious and addicted to the habit of running away and driven
by an incompetent servant, the questions whether the team was a
"runaway" team and of plaintiff's contributory negligence, are
for the jury, where it appears that the team had run away
several times, and it can not be determined by the evidence as
a matter of law either that the team did not have such vicious
habit, or that plaintiff was guilty of contributory negligence.

Appeal from a judgment of the superior court for Island
county, Hatch, J., entered September 18, 1903, upon
granting a nonsuit, dismissing an action for personal in-
juries inflicted by the defendants' runaway team. Re-
versed.

*James Anderson* and *Coleman & Ballinger,* for appel-
lant.

*Lester Still* and *H. W. Craven* (*Thos. T. Littell,* of
counsel), for respondents.

DUNBAR, J.—This action was brought by appellant to
recover $10,715, as damages for personal injuries which

[1]Reported in 78 Pac. 923.

he claims to have sustained by reason of certain so-called negligent acts of respondents. It is alleged, that on or about July 25, 1902, the respondents were the owners of a team of horses which were wild, unruly, and vicious, and given and addicted to running away, and that respondents, knowing said horses to be of such disposition, permitted them on that day to be driven upon the public highway; that one Wanamaker, the driver of said horses on said occasion, was then and there careless and incompetent to manage and drive said team, all of which was well known to the respondents; that on said date, while said team was being driven by Wanamaker in the service of respondents on the public highway in Island county, the said team, in accordance with its wild and vicious habits, became ungovernable, and ran away with the wagon to which it was attached; that the driver did not control them, but leaped from the wagon, allowing the team, with said wagon, unattended, to continue running away on said highway, at a tremendous and reckless speed; that appellant was, at the time, riding on a load of lumber on said highway, going in an opposite direction, exercising due care and caution, when suddenly said team, still attached to their wagon, dashed, at great speed and with no one to guide or control them, around a bend in the road, and struck the wagon on which the appellant was riding, with great force, overturning the same, throwing the appellant violently to the ground, and throwing the lumber upon him, inflicting the injuries complained of. The answer denied any negligence on the part of the respondents, and alleged contributory negligence on the part of the appellant. Upon the conclusion of the introduction of appellant's evidence, the respondents moved for a nonsuit, which motion was sustained by the court. The cause was dismissed, and judgment for costs

entered against the appellant. From this judgment this appeal was taken.

It is the contention of the respondents, in brief, as gathered from a citation from the case of *Cadwell v. Arnheim,* 152 N. Y. 182, 46 N. E. 310, that there is no rule of law which compels a person driving horses upon a highway to keep them absolutely under control; that he is bound to exercise only that degree of diligence and care which a man of ordinary prudence might be expected to exercise under the same circumstances; that, in the course of the affairs of life, accidents must happen and, if they are not attributable to the breach of some legal duty owing to the sufferer, he is without legal right to complain. This, no doubt, is a correct statement of the law, but its application to the circumstances of this case is not discernible. The testimony is comparatively brief, and shows, in effect, that the team which was the cause of the injury was the team of respondents; that this team was in the habit of running away—that is to say, that it had run away several times—often enough, we think, to warrant the submission to a jury of the question whether it was a vicious team, addicted to the runaway habit. The highway is intended for the use of any one who desires to use it, and no one has a right to use it to the exclusion of others, or in such a manner as to imperil the rights of others; and the degree of care which would be required of one driving a horse that had a reputation for running away would be a greater degree of care than that required of the driver of a horse which was known to be gentle, reliable, and biddable. The general rule is thus stated in 2 Cyc. 368:

"The owner or keeper of a domestic animal not naturally inclined to commit mischief, while bound to exercise ordinary care to prevent injury being done by it to

another, is not liable for such injury if the animal be rightfully in the place when the mischief is done, unless it is affirmatively shown, not only that the animal was vicious, but that the owner or keeper had knowledge of the fact. When such *scienter* exists, the owner or keeper is accountable for all the injury such animal may do, without proof of any negligence or fault in the keeping, and regardless of his endeavors to so keep the animal as to prevent the mischief."

And in relation to notice, it is stated, at page 378:

"Knowledge of a servant or agent of an animal's vicious propensities will be imputed to the master when such servant or agent has charge or control over the animal."

Knowledge of the vicious character of a horse, by one employed to drive it in delivering goods, is imputed to the owner. *Brown v. Green,* 1 Pennew. (Del.) 535, 42 Atl. 991. It was shown by the testimony in this case that the several different drivers employed by the respondents knew the tendency of this team to run away, as shown by the testimony of the drivers that the horses had, at different times, run away, or attempted to run away.

The respondents furnish in their brief an extended and earnest argument to show that the instances proven were instances of mild runaways, not exhibiting any particularly vicious tendencies on the part of the horses, but that they either ran under provocation, or did not run with any degree of velocity; while it is contended by the appellant that the testimony shows that the horses were what might be termed, in common parlance, "runaway horses." The necessity for the argument, outside of the testimony itself, shows that this is a case peculiarly adapted to the investigation of a jury to determine, from all the circumstances shown, the character of the horses in this regard. As early as the report of the case of

*McQuillan v. Seattle,* 10 Wash. 464, 38 Pac. 1119, 45 Am. St. 799, it was decided by this court that the question of contributory negligence is for the jury to determine, from all the facts and circumstances of the particular case, and that it is only in rare cases that the court is justified in withdrawing it from the jury. The same doctrine prevails throughout with reference to the alleged negligence of defendants, and that has been the uniform holding of this court from that time until the present. In *Grand Trunk R. Co. v. Ives,* 144 U. S. 408, 12 Sup. Ct. 679, the trial court, in this connection, gave the following instruction to the jury:

"You fix the standard for reasonable, prudent, and cautious men under the circumstances of the case as you find them, according to your judgment and experience of what that class of men do under these circumstances, and then test the conduct involved, and try it by that standard; and neither the judge who tries the case, nor any other person, can supply you with the criterion of judgment by any opinion he may have on that subject."

The supreme court of the United States, in passing upon this instruction, indorsed it in the following language:

"But it seems to us that the instruction was correct, as an abstract principle of law, and was also applicable to the facts brought out at the trial of the case. There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note

the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under the same state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men draw the same conclusion from them that the question of negligence is ever considered as one of law for the court."

This case was approved by this court in *Steele v. Northern Pac. R. Co.,* 21 Wash. 287, 57 Pac. 820, and the announcement of the law in that case has been uniformly adopted as the rule governing damage cases. The court, in the case just above cited, lays down the same rule in regard to contributory negligence, and says there is no more of an absolute standard of ordinary care and diligence in one instance than in the other. It cannot be determined from the testimony in this case that there could be no doubt as to whether this team was in the habit of running away. It cannot be determined, as a matter of law, that such was not the habit of the team, a determination which would have to be made before the court would be authorized in assuming to take the case from the jury and decide that question of fact itself. The same may be said of the contention of the respondents that the appellant was guilty of contributory negligence,

The judgment will be reversed and the cause remanded, with instructions to grant a new trial.

FULLERTON, C. J., and ANDERS, HADLEY, and MOUNT, JJ., concur.