[No. 6053. Decided September 12, 1906.]

T. F. HARRIS, *Respondent,* v. CARSTENS PACKING COMPANY, *Appellant.*[1]

ANIMALS—INJURIES—EVIDENCE—ADMISSIONS BY SERVANTS AFTER INJURY. In an action for personal injuries inflicted by a vicious steer while under the care of two of defendant's drovers on the public highway, evidence that the drovers, on the morning following the injury, stated that the steer was vicious and had made other attacks, is inadmissible, as the statements were not so related as to be part of the *res gestae.*

SAME—NOTICE OF VICIOUS PROPENSITY—EVIDENCE—ADMISSIBILITY. In an action for personal injuries inflicted by defendant's steer while at large on the highway, in order to show the defendant's notice of the steer's vicious propensity evidence is admissible to show that it was a "range steer" generally wild and vicious, and that it made attacks on other persons during several days thereafter.

SAME—RUNNING AT LARGE—INSTRUCTIONS. Where defendant's steer, while being driven along the highway, jumped a cattle guard and came in contact with an electric rail and was left for dead upon the railway tracks, but afterwards got up and went upon the highway, it is not error to instruct upon the assumption that the defendant allowed the steer to run unattended upon the highway.

SAME—LIABILITY OF OWNER—REASONABLE CARE. The owner of a vicious steer who permits it on the highway with knowledge of its vicious propensity, is liable for all damages it may do, regardless of the reasonable care of his drovers.

Appeal from a judgment of the superior court for King county, Poindexter, J., entered June 3, 1905, upon the verdict of a jury rendered in favor of the plaintiff, for personal injuries inflicted by a vicious steer running at large on the highway. Reversed.

*Kerr & McCord,* for appellant.

*James Hart* and *Allen, Allen & Stratton,* for respondent.

MOUNT, C. J.—Action for damages for personal injuries inflicted on the respondent by a steer belonging to defendant.

[1] Reported in 86 Pac. 1125.

There was a verdict for $1,000, and judgment for the plaintiff. Defendant appeals.

The principal material issues in the pleadings are stated in the complaint as follows:

"(II)  That on the 21st day of November, 1904, the defendant Carstens Packing Company, was the owner of a certain steer, which said steer was a wild, vicious and dangerous one, was in the habit of attacking, hooking and goring persons; that said defendant well knew that said steer was wild and vicious, and well knew that it was in the habit of attacking persons, hooking and goring them. (III) That on or about said 21st day of November, 1904, the said steer was by the defendant turned loose upon the public highway and was permitted to roam unattended on the public highway near Stuck Junction in the state of Washington."

The defendant denied these allegations. The facts are substantially as follows: The appellant is engaged in the meat business in this state, having large establishments in the cities of Seattle and Tacoma. Its slaughter houses are located at Tacoma. A large number of cattle are shipped by rail from eastern Washington and Oregon to Seattle, and are then driven along the public highway to Tacoma. About November 20, 1904, appellant started to drive one hundred and twenty-eight head of fat cattle from Seattle to Tacoma. This band of cattle was in charge of two boys, sixteen and eighteen years of age respectively, who were experienced drovers. The cattle were unloaded from the cars on the morning of November 20, and on that day were driven to O'Brien, and the next day were driven to Stuck Junction about twenty-five miles from Seattle. At Stuck Junction the highway crosses the tracks of the interurban electric railway. On the evening of the second day, the cattle were driven across the interurban tracks and half a mile beyond, where the drovers sought pasture for the night. Being refused, they turned the cattle back and drove them to Charles Biggs' place, which they had passed about one mile. They arrived at Mr. Biggs' place be-

tween six and seven o'clock in the evening. It was raining hard and was quite dark. While the drovers were placing the cattle in pasture, one of the steers turned back and returned to the interurban track about half a mile away, and was there overtaken by one of the drovers, who attempted to drive the steer back to the main herd. The steer, instead of following the highway, turned upon the railway track and jumped over the metallic cattle guard into the inclosed right of way of the railway company.

After crossing the cattle guards, about twenty-five feet therefrom, the steer came in contact with the "third rail," and was prostrated by an electric shock. The drover who was there waited until the other drover came up. One of them held the horses which they were riding, and the other took a stick and went over to the steer and punched him with the stick. The drovers, thinking the steer was dead or about dead, left him lying there and returned to the other cattle and placed them in the pasture, and then returned for the night to Auburn, about two miles back on the road by which they had come. Soon after the steer was prostrated and left near the railway track, the respondent and his wife were returning on the interurban train to their home. They got off the train at about 6:45 o'clock p. m., at Stuck Junction, which was about half a mile from their house. After the train started on, they went out into the highway, walking on their way home. Just after they entered the highway, walking along the side thereof by a ditch which contained about one foot of water, the steer came charging upon them from behind. Respondent's wife jumped into the ditch, which was two or three feet deep, and escaped. The steer caught the respondent, threw him to the ground and charged him again, goring and treading upon him, fracturing his skull and bruising his back and spine, and injuring him severely. As to the foregoing facts there is no dispute.

On the trial of the case the court, over the objection of the appellant, permitted testimony on the part of the respondent to show that the drovers, on the morning following the injury, told certain witnesses that the steer was vicious and had gored, or attempted to gore, the horses, and persons on the highway. The object of this evidence was to show that the drovers knew the vicious character of the steer prior to the injury, which was a material point in the case, for the knowledge of the drovers is imputed to the owner. In the case of *Cook v. Stimson Mill Co.*, 36 Wash. 36, 78 Pac. 39, we said:

"The rule is settled in this state that declarations of an agent, made after the transaction cannot bind the principal, unless they are so related as to constitute a part of the *res gestae*,"

and cited several cases supporting the rule. The drovers were the agents of the appellant. Their statements made the next morning after the injury cannot be held to be a part of the *res gestae*. We are unable to distinguish the principle involved in that case from the principle involved in this case. If the statements had been made before the injury, or if it had been shown that the steer had committed or attempted to commit some vicious act prior to that time, in the presence of the agents, this would have been proper evidence to show that the drovers had knowledge of the vicious character of the steer; but these facts cannot be proved by the statements of the agent made after the injury. This was a material part of the evidence, and may have been the controlling one upon the jury. It was error for the trial court to receive these statements.

In view of the fact that a new trial must be had, we shall consider other alleged errors. It is claimed that the court erred in receiving testimony to the effect that the steer remained in the vicinity for about ten days, and during that time attacked a wagon filled with school children and, also, other persons, when the steer was finally killed. The court

also allowed testimony to the effect that the steers were brought from the ranges of eastern Washington, and were what is known as "range steers," which were generally wild and vicious, and when alone or when disturbed and warm, were dangerous. We think this testimony as proper to go to the jury for the purpose of showing knowledge of the vicious character of the steer. In *Lynch v. Kineth,* 36 Wash. 368, 78 Pac. 923, 104 Am. St. 958, we said:

"The general rule is thus stated in 2 Cyc., 368; 'The owner or keeper of a domestic animal not naturally inclined to commit mischief, while bound to exercise ordinary care to prevent injury being done by it to another, is not liable for such injury if the animal be rightfully in the place where the mischief is done, unless it is affirmatively shown, not only that the animal was vicious, but that the owner or keeper had knowledge of the fact. When such *scienter* exists, the owner or keeper is accountable for all the injury such animal may do, without proof of any negligence or fault in the keeping, and regardless of his endeavors to so keep the animal as to prevent the mischief.' And in relation to notice, it is stated, at page 378: 'Knowledge of a servant or agent of an animal's vicious propensities will be imputed to the master when such servant or agent has charge or control over the animal.' "

According to this rule and according to the allegations of the complaint, which were denied, it was incumbent upon the respondent to prove that the animal was vicious and, also, that the appellant knew that fact. There can be no doubt in this case that the animal was vicious and dangerous at the time he injured the respondent. The mere fact that he attacked the respondent without cause is positive proof of viciousness. If the appellant knew, or should have known, of the dangerous disposition of the animal before the injury occurred, then the respondent was entitled to recover, although the appellant was not negligent and had taken extraordinary precautions to prevent the animal from doing harm. The fact that the animal remained vicious for several days was a circumstance

which tended to show that he was of a vicious disposition; for it is well known that domestic animals, not vicious by nature, do not become so at once and remain so when they are not previously so disposed. For this reason the evidence tended to show knowledge upon the part of the appellant, and for the same reason it was competent to show that the steer was a range steer, wild and ordinarily disposed to do mischief, particularly when alone and apart from the herd, and after having been worried and heated and maddened, which was shown to have been the condition of this animal at the time he was left upon the railway track for dead. The court committed no error in receiving the evidence complained of.

Appellant next alleges that the court erred in giving the following instruction:

"The plaintiff in this case, gentlemen of the jury, claims that, while he was on a public highway in this county, he was injured by a steer belonging to the defendant, which had been left by the defendant loose upon the public highway, and which was by the defendant permitted to roam unattended on the public highway near Stuck Junction, Washington. That the said steer was wild, vicious and dangerous, and was known to be so by the defendant, and by reason of being so dangerous the plaintiff was injured. Now, gentlemen of the jury, the ownership of this steer is admitted in this case; it is admitted that the defendant owned the steer which the plaintiff refers to in his complaint, so there is no issue on that. Neither is there any contention that this steer referred to in the complaint, which was the particular steer alleged by the plaintiff to have been injured thereby, was being driven at the time these injuries are alleged to have occurred by the employees of the defendant. Now, as a matter of fact, gentlemen, the owner of an animal which he knows, that is, which the owner knows to be wild and dangerous, it makes no difference whether he is wild or not, but knows it to be dangerous, has no right to permit such animal to go at large unattended, and if the owner of this animal knows it to be dangerous or vicious, and permits said animal to run loose or roam at large, such owner is liable for any damage which said animal may do."

It is argued by appellant that the effect of this instruction is to tell the jury that the appellant admits it owned the steer; that it turned it loose upon the highway and let it run unattended. Appellant contends that the evidence shows that appellant left the steer in a lawfully fenced right of way, believing the steer to be dead; and that while the appellant was engaged in putting the rest of the cattle in a place of safety, the steer came to and escaped upon the highway, and caused the injury complained of before appellant could have gotten back to look after it. There is no ground for the contention that the court told the jury that the appellant turned the steer loose and let it run unattended. All the court said upon this point was, in effect, that there was no contention that the steer was being driven by appellant's employees at the time the injuries are alleged to have occurred. But, even if the instruction is capable of the construction that it was admitted that the appellant owned the steer and let it run unattended upon the highway, this would not have been error in this case, because such was the substance of the admitted facts. It is true, the drovers stated that the steer jumped over the metal cattle guards and within the railway right of way, and came in contact with the third rail and was prostrated by the electric current; that they supposed the animal was dead, and they left him lying there; and that they did not go back to look after him. There was no dispute, however, that the animal afterwards got up and went upon the public highway at night, and was roaming at will. The boys were told, soon after they had left the steer, that he would probably get up and injury would result to the electric train. Under the rule we have already referred to, if the animal was vicious and the owner knew it, such owner is accountable for injury done, without proof of negligence, and regardless of his endeavor to prevent mischief. The fact that the animal had jumped over a cattle guard on to a right of way and been stunned and left for dead, would no more relieve the owner from re-

sponsibility than if the drovers had tied the animal to a post, supposing he was secure, and the animal subsequently broke his fastening and went upon the highway, doing injury. Knowledge of the dangerous character of the animal was the test of liability. And this was the point which the court attempted to make clear to the jury by the instruction above set out. If the jury found, as they evidently did, that the appellant knew the dangerous character of the animal, then it became the appellant's duty at all events to restrain the animal so that no harm could come to persons rightfully traveling the highway. Under the rule above quoted, the endeavors of appellant and his drovers to keep the animal from mischief, or the supposition that the animal was dead would not relieve the appellant from liability.

After the court had instructed the jury as to the rule relating to knowledge, the court said:

"If you believe from the evidence in this case that the defendant or drivers of the animal in question should have known that the said steer was of such a disposition or of such a nature that it would be dangerous and likely to commit an injury such as is complained of in this case, and that such steer did injure the plaintiff, it will be your duty to find a verdict for the plaintiff," etc.

If we understand appellant, his position upon this instruction and others of the same character, is that they deprive the appellant of the defense of reasonable care. A number of instructions were asked by the appellant to the effect that, if the jury found that appellant or his drovers were careful and were not negligent, then no recovery could be had. All these requests were denied. As we have seen above, the question of care or negligence did not enter into the case. The material and controlling question was, did appellant know of the vicious character of the steer prior to the injury? If so, or if he should have known it, then the admitted facts in the case fixed the liability. We think this question was properly submitted to the jury.

There was sufficient evidence to go to the jury, but in view of the error above pointed out, the judgment will be reversed and a new trial ordered.

FULLERTON, HADLEY, RUDKIN, CROW, and DUNBAR, JJ., concur.