[S. F. No. 4990. Department One.—June 14, 1909.]

## ADDISON GOODING, Respondent, v. CHUTES COMPANY, Appellant.

VICIOUS ANIMALS—BITE OF KEEPER BY VICIOUS CAMEL—ADMISSIONS IN ANSWER—SUPPORT OF VERDICT.—In an action against the owner of a vicious camel for damages sustained from its biting the plaintiff, who was hired to attend the same, when the answer to the complaint admits the employment and injury, and that at and prior to such employment, plaintiff did not know and had not been informed by defendant of its vicious disposition, and there is evidence to show that the camel was vicious and addicted to biting its keepers and others within its reach, and that defendant's superintendent knew of its vicious disposition when he hired the plaintiff, the verdict for damages in favor of the plaintiff is sufficiently supported.

ID.—KNOWLEDGE OF VICIOUS DISPOSITION OF CAMEL BY EMPLOYEES IMPUTABLE TO OWNER.—When the evidence shows without conflict that two of the fellow-employees of the plaintiff whose duty it was to take turns in the care of the camel, knew of its vicious dispotion when plaintiff was hired, and the evidence was conflicting as to whether the superintendent had such knowledge, the court properly instructed the jury that if they believed from the evidence that such employees were notified and knew that the camel in question had vicious propensities, the defendant had notice and knowledge of such vicious propensities of said camel.

ID.—KNOWLEDGE OF VICIOUS HABITS, WHEN IMPUTED, THOUGH NOT IMPARTED.—When a domesticated animal is of vicious habits, if

knowledge of such fact is brought home to an agent or servant employed about the animal, and whose duty as such agent or servant requires him, if he knows of its vicious character, to act in respect thereof toward third persons, or toward the animal for the protection of third persons, in any manner involving a breach of such duty, such knowledge of the servant is imputed to the master, although not imparted to him.

ID.—EMPLOYEES REPRESENTING OWNER.—When it was part of the duty of employees about the zoo in which the vicious camel was kept, to know whether or not the camel was dangerous to persons about it, and to take care that no person within the inclosure should be injured thereby, for that purpose they represented the Chutes Company defendant and were discharging that part of its duty towards persons allowed to enter the zoo, and if one of them, knowing the vicious propensity of the camel, carelessly suffered·a person to go near enough to be bitten by it and such person was so bitten, the Chutes Com;)any as owner would be liable for the damages thereby caused.

ID.—DUTY OF OWNER OF VICIOUS ANIMAL.—It is the duty of one who owns or keeps domestic animals known to be vicious to guard them in such a manner as will absolutely prevent the occurrence of an injury to others through such vicious acts of the animals as they are naturally inclined to commit, and the rule is the same with regard to domestic animals as in regard to wild animals, when the domestic animals are in fact vicious and their real nature is known to the owner or keeper thereof. The duty of protection against such animals is owing to the public and to those dealing with or standing in the same relation to the owner, those only being excluded who are in fault.

ID.—RELATION OF FELLOW-SERVANTS IMMATERIAL—REPRESENTATION OF DEFENDANT.—The fact that the employees having knowledge of the vicious habits of the camel were fellow-servants of the plaintiff is immaterial, since the obligation due from them was on behalf of the defendant to warn the plaintiff of the danger, and was a duty which the defendant as principal owed to the plaintiff, and in discharging or failing to discharge that duty to the plaintiff, they represented the defendant as principal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Naphtaly & Freidenrich, M. L. Schmidt, and Ackerman & Oppenheim, for Appellant.

Carl Westerfeld, and R. D. Duke, for Respondent.

SHAW, J.—This is an action for damages caused by the bite of a camel. The defendant was keeping animals for exhibition at a place called "the Chutes." The place in which the animals were on exhibition was commonly called the "zoo." Among these animals was a camel. Plaintiff was employed by the defendant to look after, care for, and attend to the animals in the zoo, including the camel. Upon entering the camel's stall to clean it, the camel seized the plaintiff's leg with his teeth, lifted him from the ground and swung him about in the air, biting his leg so severely that the bones were crushed, rendering amputation necessary. For this injury the plaintiff brings this suit. The jury returned a verdict in his favor and judgment was entered thereon. The defendant appeals from the judgment and from an order denying its motion for a new trial. The errors assigned are that the evidence is insufficient to justify the verdict and that the court erred in giving certain instructions and in certain rulings upon the admission of evidence.

The answer admits that the plaintiff was employed by the defendant to look after, care for, and attend to the camel, that the plaintiff was injured, and that, at and prior to the time of the injury, the plaintiff did not know of the vicious disposition of the camel and had not been informed thereof by the defendant. There is evidence to the effect that the camel was of a vicious disposition, addicted to biting persons attending upon it and that the defendant's superintendent knew of that disposition at the time he hired the plaintiff. There is therefore no foundation for the claim that the evidence does not sustain the verdict.

The "Chutes" had several departments, each presenting different performances or means for the amusement and entertainment of the public, all within one general inclosure. The zoo constituted one of these departments. The place was under the general charge of a general manager named Levy. The zoo was under the special supervision of a superintendent named Lawrence. Several men were employed about the zoo whose duty it was to sweep out the place daily, clean the cages and stalls every morning and throughout the day when necessary, feed, and otherwise care for the animals, watch the animals and visitors, and take care that the animals were not teased by the visitors and that the visitors were not injured by the

animals. These men were divided into two shifts for two different parts of the work, one of which included the care of the camel and its stall and the other did not, and they were changed from one shift to the other every week. The plaintiff was one of the men employed in this work. He was not assigned to the shift which included the care of the camel, until the day he was injured, one week after he began the service. The contract of employment was made with Lawrence, the superintendent of the zoo. It does not appear from the evidence who directed plaintiff to go upon the shift to take care of the camel. He had at that time acquired by his own observation knowledge of the fact that when upon the new shift it was his duty to clean the camel's stall, and he entered the stall for that purpose without being specially directed to do so, and was immediately bitten as alleged. The evidence shows, without conflict, that two of these fellow-employees of the plaintiff knew of the vicious disposition of the camel at the time plaintiff was hired. As to the knowledge thereof by Lawrence, the superintendent who hired him, the evidence was conflicting.

The court gave the following instruction:—

"2. If you believe from the evidence that the care of the animals in defendant's zoo was intrusted to employees of the defendant, and that said employees were notified and knew that the camel in question had vicious propensities, the defendant had notice and knowledge of such vicious propensities of said camel."

In view of the facts above stated the jury would naturally understand this instruction to refer to the subordinate employees aforesaid, engaged about the zoo in the actual work above described. With respect to knowledge imputed to the owner of a domesticated animal, of the fact that such animal is of vicious habits or disposition, the law is that, if knowledge of such fact is brought home to an agent or servant employed about the animal, and whose duty, as such agent or servant, requires him, if he knows of the vicious character of the animal, to act in respect thereof, toward third persons, or toward the animal, for the protection of third persons, in any matter involving a breach of such duty such knowledge of the servant is imputed to the master, although not imparted to him. (*Clowdis* v. *Fresno Flume Co.*, 118 Cal. 315, [62 Am. St. Rep. 238, 50 Pac. 373]; *McGarry* v. *New York & H. R. Co.*, 18

N. Y. Supp. 196; affirmed in court of appeals, 137 N. Y. 627, [33 N. E. 745]; *Brice* v. *Bauer,* 108 N. Y. 430, [2 Am. St. Rep. 454, 15 N. E. 695]; *Brown* v. *Green,* 1 Pennewill (Del.) 535, [42 Atl. 991]; *Niland* v. *Geer,* 46 N. Y. App. Div. 194, [61 N. Y. Supp. 696]; *Keenan* v. *Gutta P. Mfg. Co.,* 46 Hun, 546; *Corliss* v. *Smith,* 53 Vt. 532; *Harris* v. *Fisher,* 115 N. C. 318, [44 Am. St. Rep. 452, 20 S. E. 461]; *Hammond* v. *Johnson,* 38 Neb. 248, [56 N. W. 967]; *Applebee* v. *Percy,* L. R. 9 C. P. 647; *Lynch* v. *Kineth,* 36 Wash. 371, [104 Am. St. Rep. 958, 78 Pac. 923].)

It was a part of the duty of these employees, while occupied about the zoo, to know whether or not the animals, or any of them, were dangerous to persons about them, and to take care that no person within the inclosure should be injured by such animals. For that purpose, they each represented the Chutes Company and were discharging that part of the duty of the Chutes Company toward persons allowed to enter the zoo. For a failure to discharge that duty by such employees, the principal would, of course, be responsible, and if one of these employees, knowing the vicious propensity of the camel, carelessly suffered a person to go near enough to the camel to be bitten by it, and such person was so bitten, the defendant would be liable for damages thereby caused.

The defendant's claim that the above instruction is erroneous is sustainable only on the theory that the men engaged in the zoo in the actual work of caring for the animals were not charged with the duty of protecting any person against the attacks of animals, known to them to be vicious, except visitors coming there for entertainment, or other strangers, and that, consequently, their knowledge of such vicious character will not be imputed to the defendant in any manner involving danger to persons connected with the establishment. The rule cannot be thus limited. It is the duty of one who owns or keeps domestic animals known to be vicious, to guard them "in such a manner as will absolutely prevent the occurrence of an injury to others through such vicious acts of the animals as they are naturally inclined to commit." (2 Cyc. 368.) This language is used in the authority cited with respect to the duty of an owner of wild animals, which are presumed to be ferocious. The rule is the same, however, with regard to domesticated animals when they are in fact vicious, and their real

nature is known to the owner or keeper thereof. (*Laverone* v. *Mangianti,* 41 Cal. 139, [10 Am. Rep. 269] ; 2 Cyc. 369; 2 Am. & Eng. Ency. of Law, p. 352.) The duty of protection against such animals is owing to the public generally, to strangers as well as to those dealing with or standing in some relation to the owner, those only being excluded from its operation who are themselves in fault. (*Earhart* v. *Youngblood,* 27 Pa. St. 331; *Marble* v. *Ross,* 124 Mass. 44; *Laverone* v. *Mangianti,* 41 Cal. 139, [10 Am. Rep. 296] ; *Muller* v. *McKesson,* 73 N. Y. 199, [29 Am. Rep. 123] ; *May* v. *Burdett,* 9 Ad. & E. (N. S.) 101.) Upon the discovery of the vicious character of the camel, these men, as its keepers, were required to keep it in such a manner as to prevent it from injuring any and all persons lawfully within the inclosure, and to warn them of the danger, regardless of the purposes of their coming. This obligation rested on them as representatives of the defendant, and in performing it they were performing a duty which the defendant owed. In all such cases the knowledge of the servant is imputed to the master. The obligation was due from them, on behalf of the defendant, to the plaintiff when he entered the zoo as an employee, as much as to any other person allowed to enter. The fact that he then became a fellow-servant is immaterial. The duty to warn the plaintiff was not at that time owing to him as a fellow-servant; it was owing to him in common with all other persons in the same situation. In discharging that duty these employees would have represented their principal, the defendant, and would not have been acting as fellow-servants of the plaintiff. It is correct therefore, in contemplation of law, upon the admitted facts of this case, to say, as this instruction says, that if these employees knew that the camel had vicious propensities, then the defendant also had notice thereof.

Some rulings upon the admission of evidence are assigned as error, but they are of so insignificant a character that we do not think it necessary to discuss them. We find no substantial error in the record.

The judgment and order are affirmed.

Sloss, J., and Angellotti, J., concurred.

Hearing in Bank denied.