[No. 11852.   Department One.   July 21, 1914.]

CHRISTINA GUNDERSON, *Respondent*, v. JOHN BIEREN *et al.*, *Appellants.*[1]

ANIMALS—VICIOUS ANIMALS—DAMAGES—LIABILITY. The owner of a vicious bull who knows of its vicious propensity is liable for any injury it may inflict, regardless of the owner's negligence.

SAME—VICIOUS ANIMALS — INJURIES—CONTRIBUTORY NEGLIGENCE— QUESTION FOR JURY. A stock buyer, attempting to drive a bull from a corral, is not guilty of contributory negligence, as a matter of law, in striking the bull with a whip and setting his dog upon him, where there was evidence that he was riding a first-class saddle horse, and was charged so suddenly that he could not get out of the way, and that the owner of the bull had assured him that the bull was "not mean."

Appeal from a judgment of the superior court for Kittitas county, Kauffman, J., entered October 7, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death.   Affirmed.

*Englehart & Rigg,* for appellants.

*John H. McDaniels* and *E. K. Brown,* for respondent.

GOSE, J.—Plaintiff brought this action to recover damages for the death of her husband. There was a verdict and judgment in her favor. The defendants have brought the case here for review.

The deceased, at the time of his death, was an experienced stockman in the employ of one Thomas Meaghers, who was engaged in conducting a meat market and buying and handling cattle. A bull, which the deceased had bought of the appellants for his employer, attacked the horse which he was riding, and threw him over and upon the deceased with such force as to fracture the base of the skull, causing an injury from which he died on the following day. The respondent brought this action, alleging that the bull was

[1]Reported in 142 Pac. 685.

vicious, that the appellants knew it, and that they represented to the deceased that the bull was safe and gentle. The appellants joined issue on these allegations, and alleged affirmatively that the death of the deceased was brought about by his own negligence.

The testimony tended to show the following facts: The deceased and one Louis Meaghers, a son of the employer of deceased, went to the appellants' premises for the purpose of getting the bull. They found the bull in the appellants' corral with a number of cows. Louis Meaghers testified that "when we went to drive the bull out, the bull shook his head, and Arthur [meaning deceased] said [to the appellant husband] 'Is that bull mean?' and Bieren said, 'No, that bull is all right. I am no more afraid of him than I am of you.' " He further said that the appellant husband then drove the bull into the road "with a club;" that the bull, a few minutes later, followed the cows into another inclosure; and that, after some controversy over the price of the bull, and after the deceased had failed to get in telephonic communication with his employer, the deceased followed the bull into the inclosure for the purpose of driving him into the road and thence to town; that he (witness) offered to get the bull, but that the deceased said that he would get him as he had a faster horse; that when the deceased undertook to drive the bull out of the inclosure, he would not move; that the deceased first used the whip upon the bull, and then put his dog on him; that the dog nipped his heels "a few times;" that the bull made a quick turn and charged the horse which the deceased was riding; that he butted the horse three times, and then picked him up, carried him about thirty feet, and threw him upon the deceased; that after the horse had fallen, he butted him once and then walked away; that the deceased was riding a first-class saddle horse; that the appellant husband, after the accident, said, "I thought you fellows could handle any kind of a bull;" that witness answered that he had never before seen a bull attack any one

without warning, and that the appellant replied, "I had to shoot him once when he got into the field, and my boy shot him once."

Carl Kriger, a witness for the respondent, testified that, about a month before the accident, he and his brother took a cow to the bull for service; that the appellant said to them in reference to the bull "to watch him; that he is cross sometimes," and that the bull came at him three times. His brother testified that "the bull made three runs at Carl's horse and he got out of the way," and that the appellant said to them, "Be careful; that he is mean." John Nordene testified that the appellant said to him, in speaking about the bull, "Watch out for him; that he was cross," and that he said the boys had shot him. Frank Brown testified that the appellant said to him "to watch him; that he was dangerous," and said that he had had to shoot him. Fred Hinman testified that he took a cow to the bull, and that the appellant said to him, "Be careful," that the bull could not be trusted and was dangerous. Lee Smathers testified that the appellant told him that the bull had learned to fight horses when he was a calf. Another witness testified that the appellant told him that the bull would fight horses. John Snider testified that, a short time before the accident, while he was working for appellant, the bull put him upon a rock pile, and that the appellant told him afterwards to look out for him. Peter Willis testified that he took a cow to the bull for service, and that the bull charged him twice; that, upon a second charge, he staggered his horse. Lou Bender, who was with him, corroborated this statement, and stated that the appellant said the bull did not like horses. These things occurred within a few months prior to the death of the deceased. The testimony shows that the appellant and one of his sons had shot the bull a number of times with bird shot. They explained this by saying they did it in order to make him drive. The appellant testified that he did not tell the deceased and Louis Meaghers that

the bull was gentle; that after the deceased had finished telephoning and started a second time to get the bull, he warned him to be careful, and denied generally that he had warned people that the bull was dangerous.

The appellants contend, (1) that the court erred in denying their motion for a nonsuit at the close of the respondent's evidence; and (2) that the court erred in not granting the appellants' motion for judgment *non obstante*. Their contention is that the deceased was guilty of contributory negligence, as a matter of law, in using his whip upon the bull to the extent that he did, and in putting the dog on the bull, and hence that there can be no recovery.

The rule in relation to domestic animals is that the owner or keeper of a vicious animal, who knows its propensity to do mischief, is liable for any injury it may inflict. 2 Cyc. 268. In *Harris v. Carstens Packing Co.*, 43 Wash. 647, 86 Pac. 1125, 6 L. R. A. (N. S.) 1164, we said, in substance, that, if the animal is vicious and the owner knows it, he is accountable for any injury done by it, without proof of negligence. See, to the same effect, *Johnston v. Mack Mfg. Co.*, 65 W. Va. 544, 64 S. E. 841, 139 Am. St. 979, 24 L. R. A. (N. S.) 1189.

We cannot adopt the appellants' view that the deceased was guilty of contributory negligence as a matter of law. In this class of cases, like all other personal injury cases, the rule is that, if reasonable men may honestly entertain a difference of opinion upon the facts, the question is one for the jury. *Meier v. Shrunk*, 79 Iowa 17, 44 N. W. 209; *Glidden v. Moore*, 14 Neb. 84, 15 N. W. 326, 45 Am. Rep. 98; *Brooks v. Brooks*, 21 Ky. Law 940, 53 S. W. 645. In the *Meier* case, the court held that it was not negligence, as a matter of law, for the plaintiff to strike a bull with his cane before it attacked him, the jury having found that the plaintiff did not provoke the bull to make the attack. In the *Brooks* case, the owner of a cow had put her in one of the pens in the stockyards. A stock buyer went into the pen to ex-

amine cattle to see if there were any there that he desired to buy, and was injured by the cow. It was contended, upon the one hand, that the cow was vicious and that the owner knew it; upon the other, that the cow was not vicious. A plea of contributory negligence was also interposed, which the court sustained by giving a peremptory instruction to find for the defendant. The court said, in substance, that it was reasonably clear that the injured party was not guilty of contributory negligence; that he was proceeding to examine the cattle in the stock yards in the customary manner. Here the testimony of Louis Meaghers is that the bull refused to move at the command of the deceased; that the latter then used the whip upon him a few times, and that he still refused to move; that he then put the dog upon him, and that the bull suddenly whirled and charged him with such swiftness that, although he was riding a first-class cattle horse, he was not able to get out of his way.

The appellants have cited, among other cases, *Miller v. Atlantic Refining Co.*, 210 Pa. St. 628, 60 Atl. 306; *Tolin v. Terrell*, 133 Ky. 210, 117 S. W. 290; *Bush v. Wathen*, 104 Ky. 548, 47 S. W. 599, and *Keightlinger v. Egan*, 65 Ill. 235. In the first two cases, it was held negligence for one to voluntarily walk behind and near the heels of a horse or mule without speaking and without giving any warning of his presence. In *Bush v. Wathen*, it was held that one who maltreats or annoys a dog, to such an extent as to cause it to bite him, is guilty of negligence which exempts the owner from liability. In the *Egan* case, it was held that, if one voluntarily irritates and aggravates a dog and the dog bites in repelling the aggression and not from a mischievous propensity, he cannot recover. It is obvious that none of these cases meets the facts before us.

In support of this contention, the appellants also argue that bulls as a class are dangerous. A witness testified that "all bulls are more or less dangerous." Of course, a bull is a bull, and, as one of the witnesses said, a bull has a bull dis-

position.   It must not be overlooked, however, that Louis Meaghers testified that they asked the appellant husband the direct question, "Is that bull mean?" and the appellant answered, "No, that bull is all right.   I am no more afraid of him than I am of you."   It cannot be said, as a matter of law, or as a result of common observation, that bulls as a class are dangerous.   They may be, as a witness said, more or less dangerous.   Common observation and experience teach that many of them, and indeed it may be said that most of them, are not dangerous.   But, however this may be, if the testimony of the witness is to be believed (and that was a question for the jury), the deceased had the assurance of the appellant that the particular bull was not dangerous.

Upon the whole record, we do not feel warranted in disturbing the verdict of the jury.   The judgment is affirmed.

CROW, C. J., ELLIS, MAIN, and CHADWICK, JJ., concur.