[No. 21014. Department Two. June 13, 1928.]

WILLIAM J. LANDER, *Respondent*, v. FRANK L. SHANNON *et al., Appellants.*[1]

[1] MASTER AND SERVANT (98)—ASSUMPTION OF RISK—KNOWLEDGE OF DANGER. A farm hand employed to attend stock does not assume the risk of a sudden attack by a vicious bull which he was assured was gentle, or which he had no warning was vicious.

[2] EVIDENCE (18)—JUDICIAL NOTICE—PARTICULAR FACTS. It cannot be judicially known that bulls as a class are dangerous.

[3] MASTER AND SERVANT (110, 142)—CONTRIBUTORY NEGLIGENCE—KNOWLEDGE OF DANGER—QUESTION FOR JURY. The contributory negligence of a farm hand in attempting to drive a bull is a question for the jury, where he had no knowledge of its vicious propensity, and he proceeded in an ordinary manner.

[4] ANIMALS (10)—MASTER AND SERVANT (153)—VICIOUS BULL—NEGLIGENCE OF OWNER—QUESTION FOR JURY. The failure of a farmer to notify a farm hand of the vicious prospensity of a bull, which was apparently gentle, makes his negligence a question for the jury.

[5] NEW TRIAL (13½)—GROUNDS—MISCONDUCT OF JUROR. In a personal injury case, improper conduct of the jury in considering indemnity insurance, warranting a new trial, is not shown by the remark of a juror referring to appellant's argument about insurance, where it did not influence the jury, and the respondent's counsel did not discuss the question of insurance.

[1]Reported in 268 Pac. 145.

[6] TRIAL (43)—CONDUCT OF COUNSEL—SHOWING INDEMNITY INSUR-
ANCE. Improper conduct in showing indemnity insurance, in a
personal injury case, is not shown by cross-examination of
defendant's counsel, testifying as to statements made by plain-
tiff while in the hospital, to affect his credibility, in which he
admitted that he was representing an insurance company.

[7] DAMAGES (79)—EXCESSIVE DAMAGES—GROUNDS OF OBJECTION.
The award of the full amount demanded for personal injuries
does not show excessive damages as the result of passion or
prejudice.

[8] TRIAL (93)—INSTRUCTIONS—APPLICATION TO ISSUES. A correct
statement of the law, not applicable to the issues in the case, is
not prejudicial error, where the jury could not have been misled
and other instructions clearly stated the issues and the govern-
ing law.

[9] TRIAL (85)—INSTRUCTIONS—PREPONDERANCE OF EVIDENCE. In an
instruction on the preponderance of evidence, it is not neces-
sarily prejudicial to state that it is enough if the evidence pre-
ponderates "not altogether but slightly," where other instruc-
tions properly defined the preponderance of the evidence and
the burden of proof.

Appeal from a judgment of the superior court for
Walla Walla county, Sharpstein, J., entered July 13,
1927, upon the verdict of a jury rendered in favor of
the plaintiff, in an action for personal injuries. Af-
firmed.

*Ellis, Fletcher & Evans, R. B. Potts, Garrecht &
Twohy,* and *George W. Thompson,* for appellants.
*E. L. Casey* and *W. E. McCroskey,* for respondent.

HOLCOMB, J.—Respondent, a young man of twenty-
three years and a farm laborer, while in the course
of his employment by appellants in April, 1926, was
severely, in fact, terribly injured by being gored by
a vicious Guernsey bull owned by appellants on their
farm in Walla Walla county.

Respondent alleged and proved great physical and
mental pain and suffering, total incapacity for a con-

siderable period of time, great permanent diminution of his earning capacity, medical and hospital expenses in the sum of $500, and that he was damaged in the total sum of $10,000, for which he demanded judgment and which the jury awarded him.

Appellants moved for judgment n. o. v. or for a new trial, which motions were denied and judgment entered upon the verdict.

Part of the duties of respondent under the direction of appellants was to feed and care for the live stock on the farm, among which was the bull in question. The feeding and caring for the stock consisted of pasturing the cows and calves and milking; and until about April 15, 1926, to feed hay by throwing it over the fence to the bull which was in a small corral, called the bullpen, on the farm, and which up to that time had not been allowed to run out with the other cattle during the period of employment by respondent. At that time, appellants ran out of hay to feed the bull, whereupon they directed respondent to turn the bull out of the corral and into the pasture where it could obtain feed. He was directed not to let the bull mix with a herd of Jersey cattle belonging to one Nelson, which were at that time pasturing upon a portion of the farm of appellants leased to Nelson, in a large pasture which adjoined the large corral of appellants. Respondent was required to feed the bull by turning him into the pasture adjacent to the small corral during the night time and keep him in the small corral during the larger portion of the day time.

On the day in question, the Nelson cattle had broken through the fence in which they were pasturing into the large corral belonging to appellants. Respondent, noticing that the Nelson cattle had broken through the fence of their pasture and were in the large corral of appellants and that the Guernsey bull was with the

Jersey cattle and that it ought not to be allowed to mix with them, undertook to return the bull to the bullpen. To do that he procured a stick or piece of plank from a fence and started to drive the bull to the small corral or bullpen. When he had driven the bull nearly to the bullpen, the bull suddenly turned upon him, charged him, knocked him down, pushed him along the ground and gored him through the body. This, respondent testified, was done before he could "bat an eye." On previous occasions, the bull had attempted to attack other persons and frightened the wife of appellant, and was known by appellants to become suddenly vicious at times. His character seemed to be quite deceptive. He would be very gentle for weeks at a time and then suddenly become vicious.

Shortly before the injury in question, when respondent was working at something, the bull approached and licked him with his tongue on a portion of his body where his shirt was torn and respondent's body was sweaty. At that time he exhibited no vicious propensity, but after licking respondent turned away and began feeding again. There is abundant evidence of the deceptive, but vicious character of the bull, of his propensity to become vicious without warning, of the knowledge or *scienter* of appellants as to those facts and their admission that they gave no warning to the respondent of the character of the bull. Appellant, the husband, admitted he should have taken that precaution, but that he took it for granted that respondent knew.

Appellants pleaded assumption of risk and contributory negligence on the part of respondent, and denied negligence on their own part.

[1] The first proposition urged in support of their contention that respondent assumed the risk is based primarily upon an obviously erroneous premise. It is

asserted that respondent hired out to care for a dangerous animal and knew he was working with a full blooded Guernsey bull, and knew when he turned him out of the stout corral, where appellants kept him until respondent turned him out, that he was liable to be attacked by the bull.

Under the evidence as summarized by us and as presented to the jury by respondent, respondent had not been employed to care for a dangerous animal, did not know he was working with such animal and did not know that he was liable to be attacked by him. While appellants and others knew of the uncertain and vicious propensity of the bull, no such information had been given respondent. He was not employed, therefore, to care for an animal which he had knowledge or warning was a vicious animal. So far as his experience went, the animal was gentle and peaceable. When, therefore, he attempted to return the bull to the bullpen, he had no knowledge that he was undertaking any more than an ordinary duty fraught with no specific danger.

A servant assumes such dangers as are ordinarily and normally incident to his occupation, and a workman of mature years is presumed to know them, whether he does or not, and extraordinary or abnormal risks which he knows and appreciates and faces without complaint, or which are obvious or apparent. *Boatman v. Miles,* 27 Wyo. 481, 199 Pac. 933, 26 A. L. R. 864; 3 R. C. L. 841; 18 R. C. L. 676.

The ordinary risks which are assumed by a servant are those existing after the master has done everything that he is bound to do for the purpose of securing the safety of his servant.

One employed to do general farm work does not assume the risk of being placed in charge of a vicious

animal which he is assured is gentle,—or which he has no warning is vicious.

It is only when it appears to be clear that the servant had knowledge of and appreciated the danger of his employment, or that the danger was so obvious or apparent that knowledge should be imputed to him, that the court may declare as a matter of law that he is not entitled to recover from the master for an injury received therefrom.

Assumption of risk by a servant is not predicable from knowledge of the conditions alone; it must further appear that the danger was, or should have been, appreciated.

The above principles, which we approve, were enunciated in the above cited case, and it was further there held that courts would not declare that stallions are judicially known to be vicious.

[2]   Neither can it be said as a matter of law or that it is judicially known, that bulls, as a class, are dangerous. *Gunderson v. Bieren*, 80 Wash. 459, 142 Pac. 685.

Therefore, we unhesitatingly say that the facts in the case presented a question for the jury as to the assumption of the risk, and that the court could not have held as a matter of law in this case that respondent assumed the risk.

[3]   The next claim of error that respondent was guilty of contributory negligence is of very like character to the question of assumption of risk. If respondent did not know and appreciate the danger, he could not be guilty of negligence in approaching the bull at the time of his injury, unless he was negligent in the manner of approaching and handling it, of which there is no evidence. The only evidence there is in his behalf tends to show that he took such precaution as other persons who had had experience with such animals for considerable periods of time would have taken.

What a person should have done, had he known of the vicious character of the bull under such circumstances, is not the situation in this case.

Under the facts in this case, contributory negligence was also a question for the jury. *Boatman v. Miles, supra; Arneson v. Grant Smith & Co.,* 120 Wash. 98, 206 Pac. 960; *Lynch v. Kineth,* 36 Wash. 368, 78 Pac. 923, 104 Am. St. 958; *Shelby v. Seung,* 144 Wash. 317, 257 Pac. 838.

[4] Appellants vigorously insist that the evidence shows no negligence on their part. There was abundant evidence of negligence to make it a question for the jury. *Lynch v. Kineth, supra; Gunderson v. Bieren, supra; Mailhot v. Crowe,* 99 Wash. 623, 170 Pac. 131; *Miller v. Reeves,* 101 Wash. 642, 172 Pac. 815; *Kayser v. Foster,* 138 Wash. 484, 244 Pac. 708; *Boatman v. Miles, supra.*

[5] Complaint is next made of the refusal of the trial court to grant a new trial. It is asserted that the verdict is clearly excessive and the result of passion and prejudice. An affidavit by a juror was produced upon the motion for a new trial stating that the jury had before them for purposes other than the one which the court instructed them they should have, the question of liability insurance being carried by appellants. This juror made affidavit that some juryman made the query "I would like to know the amount of that policy." It is appellants' contention that this affidavit alleges facts showing misconduct of the jury in that they were considering facts not properly before them, and that this question was ruled by our decisions in *State v. Parker,* 25 Wash. 405, 65 Pac. 776; *Maryland Casualty Co. v. Seattle Elec. Co.,* 75 Wash. 430, 134 Pac. 1097; and the recent case of *Lyberg v. Holz,* 145 Wash. 316, 259 Pac. 1087.

The same juror who made the affidavit for appellants

made a counter affidavit for respondent which shows that appellants argued the question of insurance to the jury and made much of the fact that insurance rates to the farmers would be greatly increased if appellants were required to pay. The counter affidavit also shows that counsel for respondent did not discuss the question of insurance in their arguments and also that the jury were not influenced in any way by the statement made by the other juror.

This case does not fall within the principle of *Lyberg v. Holz, supra,* and the former cases cited. In the *Parker* case, *supra,* it was held that it was not for the juror to say what effect the remarks may have had upon his verdict, but that he should state facts, and from them the court would determine what was the probable effect upon the verdict. In the *Lyberg* case, *supra,* it was uncontrovertedly shown that the foreman of the jury stated in the presence of all the jurors that, if the eighteen year old defendant in the case, who was the driver of the automobile which caused the death, was found guilty of negligence, he would be laid open to a charge of manslaughter which would be held over him until he was twenty-one years old, and he could then be prosecuted upon that charge; it was also stated by one of the jurors that a certain sum had been paid to the Catholic church for masses; another juror stated as a fact that the father had been offered $700 by respondent to settle the case, but that the offer was refused because the father wanted to lay the foundation for a manslaughter case against Otto Holz.

This court held that the jurors were guilty of prejudicial conduct in considering matters not properly before them, outside the record, and that it was for the court to say what effect such statements had upon the verdict and that such statements were necessarily prejudicial.

There is no such showing in this case. There was no prejudicial misconduct on the part of any juror shown.

[6] Appellants' next complaint is that the matter of indemnity insurance was wilfully brought out in the trial.

What happened was this: Appellants placed upon the stand one of the attorneys of record for appellants who testified as to certain statements made by respondent to him while he was lying ill in the hospital. Upon cross-examination to show the interest and affect the credibility of the witness, counsel for respondent cross-examined him as to whom he represented at the time he went to respondent and questioned him and procured the purported statements from him, and whom he represented at the time of the trial. The witness testified that he represented an insurance company, and upon further questioning, named the insurance company. This, we think, was legitimate cross-examination and not wilfully injected into the case, for the sole purpose of prejudicing the jury, under our decisions in the following cases: *Moy Quon v. Furuya Co.,* 81 Wash. 526, 143 Pac. 99; *Donaldson v. Great Northern R. Co.,* 89 Wash. 161, 154 Pac. 133; *Rust v. Washington Tool & Hardware Co.,* 101 Wash. 552, 172 Pac. 846; *Skoug v. Minton,* 145 Wash. 119, 259 Pac. 15. See, also, *Bennett v. Portland,* 265 Pac. (Ore.) 433.

[7] Neither does the award by the jury in the full amount demanded for the injuries received by respondent and the permanent damage done to him, appear excessive or in any way the result of passion or prejudice.

[8] Appellants' third assignment of error is based upon the italicized portion of the following instruction:

"You are instructed that if one knowingly keeps a vicious and dangerous animal, which is accustomed to attack and injure mankind, *he is prima facie liable for injuries done by it without proof of negligence as to the manner of keeping it, the negligence on which the liability is founded is keeping such an animal with knowledge of its propensities.*"

The instruction then continues:

"Defendants would not be liable to plaintiff even if defendants were found by you to be guilty of negligence, unless such negligence, if any, was the proximate cause of plaintiff's injury, nor would plaintiff be entitled to recover if you find him to have either assumed the risk as in these instructions elsewhere stated, or to have been guilty of contributory negligence as elsewhere in these instructions explained."

It is contended that the part of the instruction italicized states a rule of law having no application to the issues involved by the pleadings and evidence in this case; that it has no bearing whatever on this case, which is one arising under the relation of master and servant and not out of the duty of appellants to the public.

It is not argued that the first portion of the instruction is not correct as an abstract statement of the law, but is argued that the whole instruction is confusing and misleading and is of especial prejudice to appellants by reason of a later instruction, No. 8, regarding the degree of proof required of respondent.

While the italicized portion of the instruction assailed is not pertinent to the issues in this case, we cannot conceive that it is so confusing and misleading as to prejudice appellants. While not strictly applicable, it was correct as a general proposition of law, but the jury could not have been misled when in other instructions they were clearly told what were the issues in this case and the rules of law governing them.

[9]  Appellants complain of the following instruction (No. 8):

"You are further instructed that the plaintiff is not bound to prove his case beyond a reasonable doubt, but is only bound to prove it by the preponderance of the evidence.  The court instructs the jury that while, as a matter of law, the burden of proof is upon the plaintiff and it is for him to prove his case by a preponderance of evidence, still, if the jury finds that the evidence bearing upon the plaintiff's case preponderates in his favor not altogether, but slightly, it would be sufficient for the jury to find the issues in his favor."

The part of the instruction complained of is that charging that if the evidence bearing upon plaintiff's case preponderates in his favor "not altogether but slightly," it would be sufficient.

It is stoutly insisted that the instruction is not good law; that the language is confusing; and, that the whole instruction places too favorable emphasis on plaintiff's side of the case.

Appellants cite cases to show how an instruction of a similar character first crept into jurisprudence in an Illinois case, *Union National Bank of Chicago v. Baldenwick*, 45 Ill. 377, where the instruction was not definitely disapproved.

In subsequent cases, similar instructions were approved as having been not found erroneous in the first Illinois case, in *Donley v. Dougherty*, 174 Ill. 582, 51 N. E. 714; *Taylor v. Felsing*, 164 Ill. 331, 45 N. E. 161; *Norton v. Clark*, 253 Ill. 557, 97 N. E. 1079; and *Teter v. Spooner*, 305 Ill. 198, 137 N. E. 129.

In the last cited case, a will contest where the required proof must be greater, the court said:

"The use of the adjectives "slight" and "clear" with reference to the preponderance of the evidence required to sustain an issue, is only confusing to the jury.  They ought not to be used in instructions in any

case. Nobody knows what is a slight preponderance or what is a clear preponderance of the evidence, although every one knows what is meant by a preponderance of the evidence. A preponderance of the evidence is necessarily clear even though it is slight. If there is a perceptible preponderance of the evidence it is sufficient, but it would not be proper for the court to give an instruction to the jury that a perceptible preponderance of the evidence was sufficient, any more than that a clear preponderance of the evidence was required. The effect of the adjectives is merely to confuse the jury and invite them to minimize or maximize the weight of the evidence on one side or the other. Such instructions ought not to be given."

In the above cited case, although such instruction was apparently frowned upon, subsequently, in civil cases not requiring such proof of affirmative issues, instructions of the same character were not disapproved. The result is that in Illinois, while such instructions have been criticized by the courts, they have not been positively disapproved. See, also: *Chicago City R. Co. v. Nelson*, 116 Ill. App. 609; *Labelle v. Grand Central Market Co.*, 172 Ill. App. 582; *Young v. City of Fairfield*, 173 Ill. App. 311; *Waiswila v. Illinois Central R. Co.*, 220 Ill. App. 113.

In a recent case in Missouri, decided by the court of appeals of St. Louis, *Thurman v. Wells*, 251 S. W. (Mo.), 75, that court reversed an order granting a new trial by the trial court upon the sole ground that an instruction of like nature had been given to the effect that the evidence need preponderate but slightly in favor of one party or the other upon an affirmative issue. The case was remanded to the trial court to enter judgment upon the verdict. As was observed in the opinion in that case, "if plaintiff was entitled to a verdict if there was a preponderance of the evidence in his favor, it would not be necessary that there be a preponderance to any definite degree or extent."

In the case at bar the trial court gave proper instructions as to what was meant by preponderance of the evidence and the burden of the proof as to the affirmative issues, how to weigh, analyze and reconcile the testimony and all other things necessary to enlighten the jury in the matter of weighing and considering the facts. They were also instructed that they were to consider all of the instructions together and not single out or give undue prominence to any single instruction.

We have always adhered to the principle of fair preponderance of the evidence in the great majority of civil cases; nor are we able to discern how there could be any difference or degree of the preponderance of the evidence, if it does preponderate. While we do not approve the instruction complained of for use in ordinary civil cases, it, together with other instructions, does no more than instruct the jury that there must be a preponderance of the evidence on any affirmative issue in order for that party to recover. Therefore, it was, here, not prejudicial error. Nor are we impressed with appellants' contention that the instructions were all calculated to impress the jury that the court favored respondent as against appellants. On the contrary, we consider the instructions, as a whole, eminently fair and unprejudiced.

Having examined the record and carefully considered the contentions made by appellants, we are convinced that appellants had a fair trial and that the errors complained of are not sufficient to warrant a reversal.

The judgment is therefore affirmed.

FULLERTON, C. J., MAIN, MITCHELL, and ASKREN, JJ., concur.