# CHARLESTON.

JOHNSTON *v.* MACK MANUFACTURING CO.

Submitted June 6, 1908.   Decided April 27, 1909.

1. ANIMALS—*Personal Injuries—Liability of Owners.*
 The owner and keeper of a boar is not liable for a personal
 injury inflicted by him, unless it appear that he was vicious,
 and that such owner and keeper had previous knowledge of his
 vicious propensity; or unless the injury was done while tres-
 passing upon lands enclosed by a lawful fence. (p. 546.)

2. EVIDENCE—*Expert Testimony—Vicious Propensity of Animals.*
 The habits and propensities of domestic animals are matters
 of common knowledge to all men, and expert testimony to prove
 the vicious propensities of a particular kind of animals, in gen-
 eral, after they become a certain age, is inadmissible for the
 purpose of proving that the owner of an animal of that class
 had knowledge of his vicious propensity. (p. 550.)

3. ANIMALS—*Running at Large—Statutory Regulations.*
 So much of section 2730, Code 1906, as relates to the running
 at large of bulls, buck sheep and boars, is the law only in those
 counties wherein it has been adopted by a vote of the people
 taken in the manner provided by section 2733 of the Code. (p.
 546.)

Error to Circuit Court, Hancock County.

Action by George H. Johnston against the Mack Manufactur-
ing Company. Judgment for plaintiff, and defendant brings
error.

*Reversed and Remanded.*

E. A. HART, J. A. McKENZIE, J. R. DONEHOO, and O. S.
MARSHALL, for plaintiff in error.

G. L. HAMBRICK and ALFRED MARLAND, for defendant in
error.

WILLIAMS, JUDGE:

This is an action of trespass on the case for personal injuries
inflicted upon plaintiff by a large boar, the property of defend-
ant. Plaintiff and defendant owned adjoining lands in Han-
cock county, and defendant was the keeper and owner of a num-
ber of hogs, among them a large boar of the Berkshire breed,.

about five or six years old and weighing from three to five hundred pounds. There was no lawful fence dividing their lands; and on the 16th day of April, 1906, this boar strayed on to the lands of plaintiff and was endeavoring to break through plaintiff's inside enclosure to get to plaintiff's hogs. Plaintiff was engaged at the time in repairing the roof of his spring house near by and did not see the hog at first. His daughter, who happened to be near by, called his attention to the hog and plaintiff got down from the building, dropped the hatchet with which he had been working and went to the hog to drive it away, whereupon it savagely attacked him, throwing him down, lacerating both legs badly and causing a compound fracture of the large bone of one leg just above the ankle; and, altogether, injured him so badly that he was confined to his bed for a period of about six weeks.

On the 19th of April, 1907, a trial was had resulting in a verdict for plaintiff for $3,660.33. Defendant moved to set the verdict aside and grant it a new trial. The court took time to consider the motion and, after due consideration, on the 26th of August, 1907, overruled the motion and rendered judgment on the verdict. Defendant presented several bills of exceptions embodying all the evidence and the rulings of the court complained of, which were signed by the judge and made a part of the record.

The case is here for review upon writ of error granted to the defendant. A number of errors are assigned; but the case depends upon a decision of the following questions: (1) Is the owner of a boar guilty of such negligence in suffering him to run at large as will render him liable for an injury inflicted on the person of another while straying on the land of the injured person; (2) In such case is it necessary to prove that the owner had previous knowledge of the vicious propensity of the animal; and (3) If so, is it proper to prove such knowledge, constructively, by expert testimony concerning the propensity of boar hogs in general to become vicious after a certain age.

It was the rule of the common law that the owner of animals was required to confine them on his own premises, and if he failed to do so, and they trespassed upon the lands of another and did injury, either to his close, person, or animals, defendant was liable. Thus it was held, in an English case, where a horse

bit and kicked a mare through a fence that the owner of the horse was liable. Lord Coleridge, in that case, says: "It seems to me sufficiently clear that some portion of the defendant's horse's body must have been over the boundary. That may be a very small trespass; but it is trespass in law." *Ellis* v. *Loftus Iron Co.*, L. R. 10, C. P. 10.

But the rule of the common law requiring the owners of animals to keep them confined on his own land is no part of the law of West Virginia. This Court decided in *Blaine* v. *Railroad Co.*, 9 W. Va. 252, and *Baylor* v. *Railroad Co.*, *Id.* 270, that this rule of the common law had no general application in this State, except in regard to animals that are unruly and dangerous. These decisions were later approved in the case of *Layne* v. *Railroad Co.*, 35 W. Va. 438.

Section 2730, Code 1906, has no bearing on this case. The act of 1882, chapter 131, of which said section is a part, (in section 4 of said act, or section 2733 of the Code), excepts from the operation of the act so much thereof as relates to the running at large of "bulls over one year old, buck sheep over four months old and boars over two months old," unless, and until, it shall have been adopted by a vote of the people of any county desiring to put such part of the act in operation in such county; and there is no evidence in the case that such provision was ever adopted as a part of the law in Hancock county. Therefore, defendant was not negligent in permitting its boar to run at large. This answers the first question, unless the animal was vicious and dangerous.

But plaintiff alleges that defendant had knowledge of the vicious propensity of the boar. It was also necessary to prove it had such knowledge. Domestic animals, as a general rule, are not vicious, and are not liable to attack mankind; and in order to make out a case entitling one to recover for injury to his person inflicted by such domestic animals it is necessary to allege and prove a *scienter*. Ingham, in his work on the Law of Animals, sec. 94, says: "Except in the case of animals *ferae naturae*, it is essential to show that the owner or keeper of an animal knew of its vicious or dangerous disposition; otherwise there can be no recovery for an injury committed by it." And in support of this he cites a long list of decisions by both the courts of England and of this country. These authorities we

deem it unnecessary to review in this opinion since this is well established law, stated by all the text writers, and recognized by all the courts.

The rule is thus stated in 2 A. & E. E. L., 364: "If domestic animals are rightfully in the place where they do the injury complained of, the owner will not be liable unless he had knowledge of the vicious propensity of such animals; and in an action for such injuries, knowledge on the part of the owner must be alleged and proved." This is no variation from the rule above quoted from Ingham, as applied in the present case, because the law in West Virginia is that a man must fence against trespassing animals, and not that the owner of such animals must confine them on his own land. There being no lawful fence enclosing plaintiff's land, the hog was not trespassing at the time it inflicted the personal injury on plaintiff.

Thompson on Negligence, Vol. 1, sec. 845, says that the trend of most decisions is to break away from the ancient rule which made the keeper of a vicious animal, having knowledge of his vicious propensity, liable at all hazards, for injury done by it, and to hold him liable only in case of some negligent act as the proximate cause of the injury. But it matters not which principle be applied in deciding this case, as either one leads to the same conclusion. In either case proof of *scienter* is necessary; in the one case if he does not take reasonable precaution to restrain the animal after such knowledge, actual or constructive, he is liable for negligence; and in the other, he is liable in any event, as an insurer against injury by such vicious animal. There was no negligence on the part of the defendant in suffering the boar to run at large, because defendant did not know its boar was vicious, and because it was not obliged, by the laws of this State, to confine it on its own land.

The rule is laid down by the Supreme Court of Maine, in the case of *Decker* v. *Gammon,* 44 Me. 322, as follows: "If damage be done by any domestic animal kept for use or convenience, the owner is not liable to an action on the ground of negligence, without proof that he knew that the animal was accustomed to do mischief before, if such animal is rightfully in the place where it does the mischief." In the next point of the syllabus the converse of the rule is stated: "If domestic animals are

wrongfully in the place where they do the mischief, the owner is liable for it, though he had no notice that they had been accustomed to do such mischief before."

There are two elements of negligence involved in this Maine case, only one of which has application to the case under review, and that is the keeping of a vicious domestic animal with knowledge of its vicious propensity. The second element does not apply in West Virginia, unless the animal trespasses upon the land of another enclosed by a lawful fence. In such case the owner of the trespassing animal might be liable, under section 2735, for a personal injury inflicted by the animal, as well as for injury done to the close. This question, however, we do not decide as it does not arise in the case. In Maine the rule of the common law of England prevails, making it the duty of the owner of animals to keep them on his own land.

All of the following cases hold the owner of the animal liable, either on the ground that the owner kept the animal after having knowledge, actual or constructive, of his vicious character; or that he negligently permitted the animal to trespass on the lands of another: *Cockerham* v. *Nixon*, 11 Ired. (N. C.) 269; *Vrooman* v. *Lawyer*, 13 Johns. (N. Y.) 339; *Godeau* v. *Blood*, 52 Vt. 251; *Knowles* v. *Mulder*, 74 Mich. 202; *Muller* v. *McKesson*, 73 N. Y. 195; *Turner* v. *Craighead*, 90 N. Y. 112; *McIlvaine* v. *Lantz*, 100 Pa. St. 586; *Lyons* v. *Merrick*, 105 Mass. 71; *Jenkins* v. *Turner*, 1 Ld. Raym. 109.

In the case of *Hayes* v. *Smith*, decided by the supreme court of Ohio in 1900, 62 Ohio St. 161, which was an action for damages for personal injuries inflicted by a vicious dog, the court based the right of recovery upon the "'keeping of the dog in a negligent manner, after knowledge of his vicious propensities, rather than the keeping of the animal with such knowledge."

The case of *Springs Company* v. *Edgar*, decided by the Supreme Court of the United States, and reported in 99 U. S. 645, is a case upon which defendant in error apparently places greatest reliance. That was an action brought by a lady who had been attacked and injured by a buck deer kept by the Springs Company in its park among others of its kind to enhance the attractions of the park which apparently was a health and pleasure resort. The plaintiff recovered a verdict for $6,500.00, and

the court refused to disturb the judgment of the lower court. It does not appear that the animal had ever attacked a person on any pervious occasion; but there was expert testimony in the case to show that a buck deer in the fall of the year the season at which this complainant was injured was liable to become vicious and attack persons. And there was further evidence that there were signs posted up at various places in the park warning persons to "Beware of the Buck." There was no other evidence that the company had any knowledge of the vicious propensity of the animal. But that was an action for an injury done by an animal *ferae naturae;* and the liability in such case depends upon a different rule of law than it does in case of injury done by domestic animals. Mr. Justice Clifford, speaking apparently for the whole court, in the opinion makes the distinction clear. In the opinion he says: "Owners of wild beasts that are in their nature vicious are liable under all, or most all, circumstances for injuries done by them; and in actions for injuries by such beasts it is not necessary to allege that the owner knew them to be mischievious for he is presumed to have such knowledge, from which it follows that he is guilty of negligence in permitting the same to be at large." On the same page of the opinion the Judge further says: "Domestic animals, such as oxen or horses, may injure the person or property of another, but courts of justice invariably hold that if they are rightfully in the place where the injury is inflicted the owner of the animal is not liable for such an injury unless he knew that the animal was accustomed to be vicious; and in suits for such injuries such knowledge must be alleged and proved, as the cause of action arises from the keeping of the animal, after the knowledge of its. vicious propensity." In support of which proposition he cites a number of authorities.

We find no authorities which hold that the owner or keeper of a domestic animal liable on account of injury done to another unless it is shown, (1) that the owner continued to keep the animal after knowledge, either actual or constructive, of the vicious propensity of the animal, some of the courts holding that after such knowledge he is liable in any event, and other courts holding that he is liable only in the event of the negligent keeping of the animal; or (2) that the injury was committed while the animal was trespassing on the lands of another, in

which case it is only necessary to show negligence in the owner in failing to keep the animal on his own land, knowledge of the vicious propensity of the animal in the latter case being unnecessary.

Apart from the attack made on the defendant, the only other evidence of the hog's viciousness is the testimony of J. D. Stewart, and of a son of plaintiff, George Johnston, Jr. The latter testified that he had chased it off his father's place a few times; that one time he and his brother were chasing it off and it turned on them, and he says, "we jumped over the fence into the pig yard and got away from it." But he thought so little of the occurrence that he is not sure whether, or not, he so much as told his father of it, much less complained of it to the owner. Stewart said that on one occasion he was passing along the road, the boar was standing off to one side, and as he passed by the boar "made a jump at him" and that he jumped to one side and dodged him; that the boar turned and came back, and that he "picked up a boulder, and throwed it at him, and he started off." This was not identified as the same boar that injured plaintiff. Witness said that he didn't take notice whether or not it had tusks.

There is no evidence whatever that defendant knew this particular hog was vicious, but on the contrary, four or five witnesses prove that during the time, three or four months, that defendant owned it, it had free range of the fields of defendant with its other hogs; that it frequented the premises of defendant's numerous tenants; and that it had never, at any time, exhibited any signs of viciousness, or shown any disposition to attack any one. Two or three witnesses testify that they had kicked it out of their way; that they had seen children, not over ten or twelve years old, drive it away from their houses with sticks. One witness says he saw his wife strike it over the head with a bucket and drive it from the trough where she had fed her own pigs; another man, that he had driven it from his yard by the motion of his hands. So that, the overwhelming weight of evidence shows that the particular hog in question was not, as a matter of fact, vicious.

The expert testimony of Howard A. Hill, a breeder of hogs, was received, over the objection of defendant, to prove that boar hogs become vicious and are likely to attack other animals and

even persons, after a certain age, unless their tusks are broken off.   But it is a matter of common knowledge that domestic animals are not vicious, as a general rule; and upon this common knowledge rests the principle which requires proof of knowledge by the owner before he can be held liable for the vicious act of his animal, except, perhaps, in case of certain animals which the statute prohibits from running at large.   The boar is not made an exception by the statute.   The reverse of the fact testified to by the expert is a matter of common knowledge; and expert testimony can not be received either to prove, or to disprove, those things which the law supposes to lie within the common experience and common education of all men.   Rogers on Expert Testimony (2nd Ed.), sec. 8; 1 Wharton on Evidence, sec. 436.   But if it could be said that this expert testimony was admissible, it would cut like a two-edged sword.   Because, while it would prove negligence on the part of the defendant in failing to confine the boar, it would also effect plaintiff, and convict him of contributory negligence, as the proximate cause of his injury, in getting down from the building where he was at work, and approaching the hog, unarmed, to drive it away from the fence.

This is the first time this Court has been called upon to review a case involving personal injury inflicted by a vicious hog; nor have we been able to find where any other court has decided a similar case.   Consequently the very novelty of the case, in view of the prevalence of the hog and man's familiarity with his natural propensities, is a contradiction of the expert testimony.

Reports of the various courts of this country are replete with cases involving injuries from biting dogs, kicking horses, vicious bulls, and an occasional case may be found where an owner has been held to account for the butting of his ram, but this is the first case of which we have any knowledge where the hog has so far departed from his usual habits of gentleness as to savagely bite and injure man.   There would, therefore, seem to be less reason for demanding expert testimony to prove the general propensity of the hog than there would be in the case of the horse, the ox, or the sheep.   All domestic animals stand in the same category, except where the rule applicable thereto has been modified by statute; and under the law of this State, no evidence

short of proof that defendant knew, or by reasonable diligence should have known, that its hog was of a vicious disposition, or propensity, will suffice to sustain a verdict for damages for the injury.

We think the expert testimony was improperly admitted, and was prejudicial to plaintiff in error. Without such testimony there is not the slightest evidence in the record to support the verdict. It was an unfortunate occurrence, and a serious injury to plaintiff, but it is not shown that defendant was guilty of any wrong or negligence, and the law does not hold it liable.

We deem it unnecessary to review the other points of error assigned. Our conclusion is, that the verdict is contrary to the law and the evidence, and that it was error not to set it aside.

We therefore, reverse the judgment, set aside the verdict and, according to the established practice of this Court, remand the cause for a new trial, it not being made to appear clearly that the plaintiff may not be able on a second trial to strengthen his case.

*Reversed and Remanded.*