# CHARLESTON.

CLINE *v.* NORFOLK & WESTERN RAILWAY COMPANY.

Submitted March 17, 1910.  Decided May 16, 1911.

WATERS AND WATER COURSES—*Railroad Embankment—Change of Channel—Liability.*

If a railroad company make a fill or embankment along a stream which changes the channel and current, and thus cause land of a riparian owner across the stream to be washed away, it is liable for the damage, and is not exempt from liability by the authority conferred on it by the state to build its road.  (p. 437).

Error to Circuit Court, McDowell County.

Action by James J. Cline against the Norfolk & Western Railway Company. Judgment for plaintiff, and defendant brings error.  *Affirmed.*

*Wyndham Stokes* and *J. Graham Sale,* for plaintiff in error.

*Cook & Howard,* for defendant in error.

BRANNON, JUDGE:

The Norfolk & Western Railway Company constructed two

fills or embankments on one side of Tug river for a second track, invading the river. One of these fills was just across the river from a tract of land owned by James J. Cline. In 1907 and again in 1908 high water came in Tug river and washed away a considerable quantity of Cline's land and the trees thereon. Cline sued the railway company and obtained a verdict and judgment for $150, and the company brought this writ of error.

One defence of the action presented for our consideration is, that the railway company built these fills on its own right of way and in doing so did the work in the most approved manner, and was not guilty of any negligence in construction, and therefore, though damage came to Cline, there could be no recovery. Such a legal proposition cannot be sustained. There seems some confusion yet prevailing touching this matter so well established in law that it seems hardly necessary to restate it. When the constitution provided that "private property shall not be *taken* for public use without just compensation," the law was that a railroad company or other corporation having authority from the legislature was not liable when land was not actually taken, or so damaged that it amounted to that, for damages to the land merely consequential from the work. *Spencer* v. *Railroad,* 23 W. Va. 413, 427; 4 Am. & Eng. Ann. Cas. 1175, 1185; 15 Cyc. 653; 10 A. M. & Eng. Ency. L. 1103. But if the work was done negligently, if the power was not prudently and carefully exercised, damages could be recovered. *Taylor* v. *Railroad,* 33 W. Va. 39. Some cases held that damages could be recovered even under such provision using only the word "taken;" that a grant of authority from the legislature could not exempt for property merely damaged, but not taken. *Trenton Co.* v. *Raff,* 36 N. J. L. 335. But this has become an immaterial question, because our constitution of 1872 inserted the word "damaged," making it read, "Private property shall not be *taken* or *damaged* for public use without just compensation." Therefore, no matter whether the property is actually, physically taken, or so badly damaged as to amount to a taking, or be merely damaged to a substantial, not speculative, extent, damages may be recovered, and the legislative authority for the work matters not. *Pickens* v. *Coal R. Co.,* 66 W. Va. 10; *Guinn* v. *Railroad,* 46 *Id.* 151; *Gillison* v. *Charleston,* 16 *Id.* 282; *Wat-*

*son* v. *Fairmont,* 56 *Id* 528.  This provision of our constitution came from Illinois, and construing that constitution the United States Supreme Court held in *Chicago* v. *Taylor,* 125 U. S. 161, that: "Under the provision in the State of Illinois adopted in 1870 that 'private property shall not be taken or *damaged* for public use without just compensation,' a recovery may be had in all cases where private property has sustained a substantial injury from the making and use of an improvement that is public in its character; whether the damage be direct, as when caused by trespass or physical invasion of the property, or consequential as in a diminution of its market value." So, if damages came to Cline from those fills, he is entitled to recover.

Another ground of defence is, that in fact the fills or embankments did not cause the damage.  On this question the evidence is conflicting.  There is a large amount of evidence going to show that though there had been in 1901 and 1902 higher rises in Tug river, yet they did not wash the land away, and that these fills changed the current of the stream from the railway side of the river to the other side and threw the current against Cline's land, and that the washing away of the land was directly attributable to these fills.  There is some evidence to the contrary.  The question was one of fact for the jury.  We shall not detail the evidence.  The verdict and the action of the circuit court must be in this respect final.  Else what efficacy has a verdict upon conflicting oral evidence?

It is complained that the court allowed witnesses to express an opinion that the damage to Cline's land came from those fills.  The witnesses giving such opinion were well acquainted with the stream and the fills and had been acquainted with the stream for years before, and spoke from observation of river and fills.  Opinion evidence is not always to be rejected.  When it is based on practical and actual observation of things, which cannot be brought into court to be seen by the jury, it is admissible.  This matter had been often discussed.  *Walker* v. *Strosnider,* 67 W. Va. 39, pt. 17; *Kunst* v. *Grafton, Id.* 20.

Complaint is made of the refusal of instructions.  Some of them are based on the proposition of law above stated, and are not sound in that respect.  One asserts that it was the duty of Cline to build a defence of his land against the water, and thus prevent damage.  Plainly this cannot be so.  The work changed

the channel and current, and Cline as a riparian owner was entitled to have the river as by nature it was. We need not incorporate those instructions as the case does not go back for retrial, and as they involve no principle of law not above stated. We need not further discuss the case.

Judgment affirmed.

*Affirmed.*