## AMERICAN COAL CO. OF ALLEGANY COUNTY v. DE WESE et al.

Circuit Court of Appeals, Fourth Circuit.
January 14, 1929.

No. 2765.

George Richardson, Jr., of Bluefield, W. Va., for appellant.

Russell S. Ritz, of Bluefield, W. Va. (John R. Pendleton, of Princeton, W. Va., on the brief), for appellees.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge. The appellant is a New Jersey corporation duly authorized to do business in the state of West Virginia. It owns certain leaseholds in Mercer county, W. Va., acquired in the year 1922, by deed of conveyance from American Coal Company of Allegany County, a West Virginia corporation. The two companies had the same superintendent, tipple foreman, and other officers. The company carried on a coal mining operation in said county, and as

had been done by the former owner, disposed of the refuse from its mine by dumping it from its tipple into a ravine or hollow. The material thus dumped consisted of slate, bone, and other impurities taken from the coal at the tipple, and ranged in size from lumps approximately 12 inches down to fine particles that came out of the washer.

This refuse was dumped at the top of a ridge, and permitted to roll down the side of the hill into the hollow or ravine below, until the refuse or "gob" pile extended clear across the ravine and began to fill it. There was a natural drain or watercourse down this ravine draining a watershed, as to the area of which the testimony is conflicting; its extent being placed by some witnesses at 82½ acres, and by others at 22.3 acres.

It was testified that there was a spring in this hollow, from which there was some flow most of the time, if not all the time. That there was a natural watercourse running down the ravine past the refuse pile was admitted at the trial of the case.

No provision whatever was made for drainage under this pile of waste material. As the dumping continued, the waste pile grew larger, and the water that at first ran by or percolated through the pile became more and more obstructed, and began to accumulate or dam up behind the pile, but to no great extent.

A considerable part of the material in the waste pile was inflammable, and for a number of years a fire had been burning or at least smoldering in it, a fact known to the officials of the coal company. No effort had been made to extinguish the fire.

The waste pile extended across the ravine, a distance of approximately 305 feet, and extended up and down the ravine a considerable distance.

Several years before the happening complained of, the company had erected two houses, about 650 feet, by direction, below the waste pile; the houses being down the hollow, and considerably lower, in altitude, than the bottom of the waste pile. A road ran between the waste pile and the houses, the road having a drainpipe under it for the passage of water. The houses were rented to two employés of the company, S. C. Vest and Toy De Wese, and were occupied by these employés and their families.

On the night of June 8, and the morning of June 9, 1924, an extremely hard rain fell in the vicinity of the mine. The testimony as to this rain was conflicting, some witnesses testifying that it was unprecedented in volume, others, while saying that it was unusu-ally heavy, testifying that they had known rains equally as heavy in the same neighborhood. There was, in any event, an extremely heavy volume of rain. Following this rain the water draining from the hillside above accumulated in the hollow at the point where the waste material was dumped, until it backed up the ravine for a distance of about 150 feet. The pool or pond thus formed was 8 feet deep at the deepest point.

Because of the weight of this accumulation of water, accelerated by an explosion that took place when the water came in contact with the fire in the pile, the waste pile started to slide down the hollow, and a large mass of the waste covered the house occupied by S. C. Vest, in which, at the time, were the wife and child of S. C. Vest, the wife and two children of Toy De Wese, and Fletcher De Wese and his wife, killing all seven of the occupants of the house.

An action was brought against the appellant by the personal representative of each of the seven persons killed, in the circuit court of Mercer county, W. Va., and these actions were removed to the District Court of the United States for the Southern District of West Virginia. On the trial a stipulation was entered into that the seven cases should be tried together before one jury, the jury to render separate verdicts in each case. The trial resulted in a verdict by the jury for the plaintiff in each case in the sum of $6,000, and judgment was given the plaintiffs on the verdict by the judge below, from which action this appeal was taken.

■ There are twenty-four assignments of error; the first being that the court erred in not permitting counsel for appellant, defendant below and here referred to as defendant, to ask Toy De Wese if he was married again. Just what relevancy there was in this question, we fail to see.

■■ The second, third, fourth, and fifth assignments relate to the refusal of the court to permit defendant to introduce evidence showing that the method of dumping the waste material in its gob pile was considered a safe and an approved method, and was in accord with a practice commonly followed in the coal field in which defendant's mine was located; that there was nothing in the experience of operators in that field to suggest danger in the way the waste was piled; and that the porous character of the waste material would of itself admit of drainage sufficient to carry off the water reasonably expected to gather in the hollow from ordinary rainfall.

On these questions we think the court was

right in excluding the testimony offered. In the light of the admitted physical facts that existed in connection with the waste pile, it seems clear that usage and custom, with regard to other waste piles built under different or even similar conditions, no matter how well established, could not excuse the defendant from negligence in the way in which the waste pile was built up. The damming and obstructing of a natural watercourse, the resultant impounding of the water, permitting a fire to burn in the waste pile for a number of years, thereby adding to an already obviously dangerous situation the peril of possible explosion, the renting of houses obviously not safe, all go to make improper the introduction of evidence as to usage and custom in the building, at coal mines, of waste piles generally.

"A negligent act, clearly shown to be such, cannot be justified on the ground of custom or usage, and evidence of such custom or usage is not usually admissible for that purpose." Thompson on the Law of Negligence, § 7882.

"The broad rule has often been asserted that usage and custom do not justify negligence, and obviously the fact that the defendant has been habitually careless and asserts a usage to be exempt from the legal consequences of his negligence is of no avail. Where the usage or custom is invalid by reason of its unreasonableness, unlawfulness or the like, and is productive of injury, the generality of the custom cannot in a given case in any degree excuse or justify the act." 27 R. C. L. 194.

The principle that custom and usage cannot justify negligence has been expressly adopted by the West Virginia courts. Pinkney v. Kanawha Valley Bank, 68 W. Va. 254, 69 S. E. 1012, 32 L. R. A. (N. S.) 987, Ann. Cas. 1912B, 115.

"As a general rule it may be said that whenever the law condemns an act as negligent, evidence of a custom or usage to do such act is not admissible to show that the act was not negligent." 29 Am. & Eng. Encyc. of Law 418, quoted approvingly in Schaffner v. National Supply Co., 80 W. Va. 111, 92 S. E. 580.

See, also, Thompson v. Boston & M. R. Co., 153 Mass. 391, 26 N. E. 1070; Cement Co. v. Seal, 110 Va. 484, 66 S. E. 75; Navigation Co. v. Aitken, 196 U. S. 589, 25 S. Ct. 317, 49 L. Ed. 610.

"Expert evidence touching matters of common knowledge is not admissible." Virginia Iron, etc., Co. v. Tomlinson, 104 Va. 249, 51 S. E. 362.

"Expert testimony cannot be received either to prove, or to disprove, those things which the law supposes to lie within the common experience and common education." Rogers on Expert Testimony (2d Ed.) § 8; 1 Wharton on Evidence, § 436; Johnston v. Mack Mfg. Co., 65 W. Va. 544, 64 S. E. 841, 24 L. R. A. (N. S.) 1189, 131 Am. St. Rep. 979.

The sixth assignment of error relates to the refusal of the trial court to permit the defendant to prove that De Wese and Vest had rented the two houses struck by the slide upon their own requests. We cannot see what materiality this question would have, as it is admitted that the houses were rented. Whether rented at the request of De Wese and Vest or at the solicitation of the defendant is immaterial. The court properly excluded this evidence.

The seventh assignment of error refers to the admission by the court of evidence to the effect that the same interests that owned the American Coal Company of Allegany County, the West Virginia corporation, also owned the New Jersey corporation, the defendant. We think this evidence was pertinent and material as showing knowledge of officials in charge of the corporation; but, even if it was not material, its admission was in no way prejudicial to the defendant, and did not constitute reversible error.

Assignments of error 8 to 24, inclusive, refer to the court's giving or refusal to give certain instructions, and the court's charge to the jury, and deal with three main questions: (1) That the court erred in charging the jury that they were justified in finding that defendant was guilty of negligence, if they believed the evidence on behalf of the plaintiff as to the manner of handling the waste, and that they would be justified in finding for the plaintiffs, if they believed such negligence was the proximate cause of the deaths; (2) that the court erred in charging the jury that even if the waste material was caused to move by an act of God and the forces of nature, yet if such act was accelerated and augmented by the wrongful acts of the defendant, they should find for the plaintiffs; (3) that the court refused to instruct that if the tenants, Vest and De Wese, knew, or by investigation could have known, of the condition of the waste pile, they were guilty of contributory negligence, and could not recover for the deaths of those of the deceased as to whose estates they would be the sole distributees.

On the first point it seems clear that the piling of the waste material so as to obstruct a natural watercourse, impounding water be-

hind the obstruction, and allowing the waste pile to burn for a number of years, constituted negligence.

"One who erects such a structure in a stream as because of the character of the structure or the stream it can be seen, or reasonably contemplated, that damage will likely result therefrom to another, is negligent; and if the current of said stream becomes so obstructed, by reason of such structure being washed down in said stream, that the water therein is diverted from its ordinary channel and destroys the property of another, the party erecting such structure will be liable in damages, notwithstanding such structure may have been destroyed by an extraordinary flood." Williams v. Columbus Producing Co., 80 W. Va. 683, 93 S. E. 809, L. R. A. 1918B, 179; 27 R. C. L. 1108.

In the case of Trump v. Bluefield Waterworks, 99 W. Va. 425, 129 S. E. 309, a West Virginia case, the water company was held to be negligent in having, in the course of constructing a dam across a small stream in a narrow ravine, failed to provide a proper spillway; the dam having been washed out by what was claimed to have been an unprecedented rainfall.

"If a railroad company make a fill or embankment along a stream which changes the channel and current, and thus cause land of a riparian owner across the stream to be washed away, it is liable for the damage. * * *" Cline v. N. & W. Ry. Co., 69 W. Va. 436, 71 S. E. 705.

"One cannot negligently obstruct or divert the water of a natural course to the injury of another without liability." Atkinson v. C. & O. Ry. Co., 74 W. Va. 633, 82 S. E. 502.

See, also, Weaver Mercantile Co. v. Thurmond, 68 W. Va. 530, 70 S. E. 126, 33 L. R. A. (N. S.) 1061; Wigal v. City of Parkersburg, 74 W. Va. 25, 81 S. E. 554, 52 L. R. A. (N. S.) 465.

In Island Coal Co. v. Clemmitt, 19 Ind. App. 21, 49 N. E. 38, the Supreme Court of Indiana held the coal company liable for damages caused by negligently piling refuse from a mine.

The instructions given to the jury and the court's oral charge correctly stated the law on this point.

As to the second question it also seems clear that the trial court correctly charged the jury. While it is true that the defendant could not be held liable for damages caused by an act of God, yet, if by negligence the defendant contributed to the injury, then liability exists, notwithstanding such an unprecedented rainfall as would have constituted an act of God. The large volume of water that fell would not alone have caused the damage that resulted. The proximate cause of the injury was the waste pile and the conditions surrounding it, and the act of God was not the sole cause.

In the case of Williams v. Columbus Producing Co., supra, in a well-considered opinion, Ritz, J., said: "It thus appearing from the declaration that the defendant was negligent in erecting these structures in Cabin Creek, is it relieved from liability because the flood which washed the structures down, whereby the water was diverted from the channel, was one of extraordinary proportions, such as could not reasonably be contemplated? It is quite true that one is not liable for an injury caused by an act of God, but if the negligence of the defendant concurred with such act in producing the injury, or in any manner contributed thereto, then liability exists. In order to excuse upon the ground that the injury was caused by an act of God it must appear that such was the sole cause."

"That which reasonable human foresight, pains, and care should have prevented cannot be called an act of God." Atkinson v. C. & O. Ry. Co., supra.

"It is universally agreed that, if the damage is caused by the concurring force of the defendant's negligence and some other cause for which he is not responsible, including the 'act of God' or superior human force directly intervening, the defendant is nevertheless responsible, if his negligence is one of the proximate causes of the damage, within the definition already given. It is also agreed that, if the negligence of the defendant concurs with the other cause of the injury, in point of time and place, or otherwise so directly contributes to the plaintiff's damage that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable, notwithstanding he may not have anticipated or been bound to anticipate the interference of the superior force which, concurring with his own negligence, produced the damage. But, if the superior force would have produced the same damage, whether the defendant had been negligent or not, his negligence is not deemed the cause of the injury." First Shearman & Redfield on Negligence (6th Ed.) § 39.

"While it is the general rule that where rains are so unprecedented, and the flood caused thereby so extraordinary, that they are in legal contemplation the act of God, one obstructing a natural watercourse will not be

held liable, it must appear in order to give immunity under that rule, that the act of God is not only the proximate cause but the sole cause of the injury. And where an unprecedented flood is the cause of the injury, but the prior, coincident, or subsequent negligence of a person obstructing a natural watercourse so mingles with it as to be an efficient and co-operating cause, the obstructor will be held responsible, because his act is causa sine qua non. In other words, where the loss is the reasonable consequence of a negligent act, it is regarded in law as the act of the negligent person rather than as the act of God." 27 R. C. L. 1107, and cases there cited.

Compare Gas Co. v. Webb, 117 Va. 269, 84 S. E. 645; Standard Oil Co. v. Wakefield, 102 Va. 824, 47 S. E. 830, 66 L. R. A. 792; Light Co. v. McClintock, 97 Ark. 576, 134 S. W. 1189, 1199, 32 L. R. A. (N. S.) 825; Milwaukee & St. P. R. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256.

On the third point as to the contributory negligence of the tenants, Vest and De Wese, who were, as administrators, plaintiffs in six of the seven suits, both of them testified that they knew nothing concerning the waste pile and the conditions surrounding it. They testified that they did not know whether there was a drain or culvert under it, and that they had not been about or on it. After a careful study of the record, we find no evidence which would have justified the submission of the issue of contributory negligence to the jury.

A great deal had been said in the case as to whether the doctrine of Ryland v. Fletcher, L. R. 1 Exch. 265, that " * * * the person who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it at his peril, and, if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape," governs this case. This rule has been quoted approvingly by the Supreme Court of West Virginia. Weaver Mercantile Co. v. Thurmond, supra; Wigal v. City of Parkersburg, supra.

In view of the conclusions above reached with regard to the negligence of the defendant company, it is not necessary to decide whether this rule applies here, as negligence would make the defendant liable in the absence of the application of this doctrine.

There was ample evidence to sustain the verdict of the jury, and there was no error in the trial.

The judgments of the court below are accordingly affirmed.